FILED

99 JUL -1 PM 3: 49

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUL - 1 1999

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

IN RE:                              }
                                    }
MONARCH TILE, INC.,                 }
                                    }       CIVIL ACTION NO.
    Debtor                          }
                                    }       98-AR-2681-NW
_____}
ENSR CORP.,                         }
                                    }
    Appellant                       }
                                    }
v.                                  }
                                    }
MONARCH TILE, INC.,                 }
NATIONSBANK OF TEXAS, and           }
INDUSTRIAL DEVELOPMENT BOARD        }
OF THE CITY OF FLORENCE,            }

    Appellees.

### MEMORANDUM OPINION

ENSR Corp. ("ENSR") has appealed to this court from an order entered on August 21, 1998 by the United States Bankruptcy Court for the Northern District of Alabama in its case NO. 07-84828-JAC-11. ENSR contests two of the bankruptcy court's findings: (1) the conclusion that ENSR's properly perfected mechanic's lien on certain property held by debtor-appellee, Monarch Tile, Inc., now doing business as M.T. Tile, Inc. ("Monarch"), was null and void pursuant to 11 U.S.C. § 506, and (2) the conclusion that ENSR's mechanic's lien did not attach to the real estate interest of appellee, Industrial Board of the City of Florence ("IDB"), and therefore to the "offer of surety" made by appellee, NationsBank, N.A., successor by merger to NationsBank of Texas, N.A. ("NationsBank"). The judgment of the bankruptcy court is

due to be affirmed with respect to both issues.

**Background**

Monarch is a Delaware corporation engaged in the manufacture and sale of tile and related products. Monarch has its principal place of business in Florence, Alabama. Pursuant to a lease agreement dated August 1, 1989, Monarch agreed to lease certain real property located in Florence from IDB. Monarch operates a manufacturing facility on the leasehold.

On July 11, 1995, Monarch granted NationsBank a mortgage on all of Monarch's interest in the leased property as security for a loan in excess of $20,000,000.00. The loan was to fund a substantial renovation and improvement project on the manufacturing facility located on the leased property. Work on the project commenced in early 1996. Monarch endeavored to finance at least a portion of this work with funds from IDB, which in turn could obtain a grant for the project under § 41-10-26(10) of the Alabama Code.[1] In early 1996, Monarch began efforts to ensure that IDB would receive such a grant. On April 8, 1998, IDB was awarded a grant of $ 286,976.00.

In connection with the renovation project, Monarch contracted

---

[1] This section authorizes the State Industrial Development Authority ("SIDA") to issue grants of money to local industrial development boards for the following purposes: (1) the making of surveys to determine the location of suitable industrial sites, (2) the making of surveys to determine the availability of labor and to classify such labor in terms of skill and educational level, (3) the preparation of industrial sites, or (4) any combination of the foregoing which the local industrial development board considers appropriate and necessary for the promotion of industrial development. § 41-10-27(a).

2

with several entities, including Garnet Electric Co., Inc. ("Garnet"), Johnson Contractors, Inc. ("Johnson"), and ENSR to work on the project. Garnet contracted to provide electrical services. It worked on the project from January, 1997 through June, 1997. Johnson contracted to provide excavation and land-scaping, as well as water and sewer system improvements. Johnson provided services on the project from June 13, 1996 through December 14, 1997. ENSR contracted to provide survey work and environmental consultation and remediation. The date on which ENSR commenced work on the project is unknown, but it is undisputed that ENSR began its work in 1996 or 1997. It last provided services on December 15, 1997. ENSR and the other entities were paid for a portion of the work performed, but outstanding balances remained.

On December 16, 1997, Monarch filed a Chapter 11 petition. Garnet filed a verified claim of lien in state court on January 26, 1998 and, on February 9, 1998, commenced a suit to perfect its lien. Johnson filed a verified statement of lien in state court on January 12, 1998 and, on April 1, 1998, commenced an action to perfect its lien. On January 15, 1998, ENSR filed a verified statement of lien in state court and commenced an action to perfect its lien on May 19, 1998. These being adversary proceedings, they were removed to the bankruptcy court[2] and were subsequently consolidated. At the direction of the bankruptcy court all parties except IDB filed cross-motions for

---

[2] Nationsbank and Monarch filed notices of removal in the Garnet and Johnson actions; ENSR removed the action to federal court itself.

summary judgment.

While these motions were pending and before Monarch's Chapter 11 plan had been confirmed, Monarch located a willing buyer for the majority of its assets and requested the bankruptcy court's approval for sale of its assets pursuant to 11 U.S.C. § 363(f).[3] The proposed buyer, American Marazzi Tile, Inc. ("AMT"), offered to pay approximately $ 20,000,000.00 for certain of Monarch's assets. Over the objections of Garnet, Johnson, and ENSR, the court approved the sale of the designated assets free and clear of any liens, claims, interests, charges, or encumbrances of any type. The August 13, 1998 order approving the sale provided that any lien, claim, interest, charge or encumbrance on or in the assets would attach to the proceeds of the sale in the order of their priority, and with the same validity, force and effect, as if the assets had not been sold. The order also provided that NationsBank would pay to the lien claimants any portion of the proceeds which it receives from the approved sale and which are determined to be the property of the lien claimants.

Shortly after approving the sale of Monarch's assets, the

---

[3] 11 U.S.C. § 363(f) allows the trustee to sell property free and clear of any interest in such property of an entity other than the estate if:
   (1) applicable nonbankruptcy law permits sale of such property free and clear of such interests;
   (2) such entity consents;
   (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
   (4) such interest is in *bona fide* dispute; OR
   (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

bankruptcy court held a hearing on the pending motions for summary judgment. Per order entered August 21, 1998, the court concluded that Garnet's lien was not properly perfected against Monarch's assets. The court further concluded that Johnson and ENSR had properly perfected their statutory liens, but the liens were null and void against Monarch's assets. The bankruptcy court entered no memorandum opinion. However, the transcript of the hearing on the motions suggests that the court's decision was based on the fact that, after the consummation of the sale between Monarch and AMT, there was no equity to which Johnson's and ENSR's statutory lien could attach.

ENSR -- and only ENSR -- appealed the August 21 order, challenging the court's conclusion that the lack of equity renders its lien null and void. ENSR then added a second issue for consideration on appeal, namely, whether the bankruptcy court erroneously concluded that ENSR's statutory lien does not attach to the fee interest of IDB, and therefore to the "offer of surety" allegedly made by NationsBank. After the notice of appeal was filed, the bankruptcy court entered an order directing the parties to brief the issue of whether the site grant obtained by IDB is property of Monarch's bankruptcy estate. On November 18, 1998, the bankruptcy court concluded that the site grant was payable to Monarch, subject to the court's determination of any amounts due ENSR and/or Johnson.

## Discussion

### The First Issue

The essence of the parties' dispute in the bankruptcy court, and on appeal, appears to be the applicability and meaning of a particular precedent from the United States Supreme Court: *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773 (1992). *Dewsnup* was a Chapter 7 case in which a debtor sought to "avoid" a portion of a creditor's lien on real property by reducing the lien to the fair market value of the collateral securing the claim, then void the remainder of the claim.[4] *Id.* at 413. As support for her position, the debtor there relied on § 506(d) of the Bankruptcy Code, which voids all liens against a debtor that are not allowed secured claims, and § 506(a), which essentially bifurcates claims into secured and unsecured claims.[5] *Id.* The debtor argued that to the extent her creditor's claim exceeded the interest of her bankruptcy estate in the property, the lien was void under § 506(d). *Id.* at 413-15. Over a strong dissent by Justice Scalia, the

---

[4] This procedure is variously known as "lien-stripping," "lien avoidance," or "stripping-down" liens.

[5] 11 U.S.C. § 506(a) provides in pertinent part:
   An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of the value of the creditor's interest in the estate's interest in the property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.
11 U.S.C. § 506(d) provides:
   To the extent that a lien secures a claim against the debtor that is not an allowed secured claim , such claim is void.
§ 506(d) contains several exceptions not relevant here.

6

Court rejected the debtor's argument, holding instead that § 506(d) did not authorize lien stripping. *Id.* at 417. The Court recognized that liens typically pass through a bankruptcy unaffected, and reasoned that if Congress intended to change this practice and to allow the filing of a bankruptcy petition altering the rights of creditors, Congress would have done so unambiguously. *Id.* at 417-19. The Court went on to conclude that § 506(d) did not constitute an unambiguous expression of Congress's intent to change pre-Code law, and that it therefore did not authorize lien stripping. *Id.* at 419-20.

The *Dewsnup* decision has been heavily criticized by courts of various jurisdictions. *See, e.g., Dever v. Internal Revenue Serv.*, 164 B.R. 132 (Bank. C.D. Cal. 1994); *Bowen v. United States*, 174 B.R. 840, 852-55 (Bankr. S.D. Ga. 1994); *In re Butler*, 139 B.R. 258, 259 (Bank. E.D. Okla. 1992). Many courts have limited its applicability to Chapter 7 cases. *See, e.g., Harmon v. United States*, 101 F.3d 574 (8th Cir. 1996); *Wade v. Bradford*, 39 F.3d 1126 (10th Cir. 1994). Even the Supreme Court's opinion expressly limited the holding to the facts presented, stating:

> Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.

*Dewsnup*, 502 U.S. 416-17. Other courts have concluded that because the Court interpreted a section of the Code that was designed to apply to all Chapters, the holding of *Dewsnup* applies outside the Chapter 7

7

context. *See Gold Coast Asset Acquisition v. 1441 Veteran St. Co.*, 144 F.3d 1288, 1292-93 (9th Cir. 1998).

It appears from the transcript of a hearing held August 21, 1998, that the bankruptcy court's decision rests on the assumption that *Dewsnup's* holding does not apply in Chapter 11 cases like this one. Because this court bases its decision on other grounds, it expressly declines to decide whether *Dewsnup's* holding should be extended beyond Chapter 7 cases.

In *Dewsnup*, the Supreme Court did not hold that § 506(d) prohibits lien-stripping in Chapter 7 proceedings. It only held that § 506(d) does not itself provide the authority to do so. *Harmon*, 101 F.3d at 581; *see Dewsnup*, 502 U.S. at 417. The lien in *Dewsnup* passed through the bankruptcy unaffected not because § 506(d) prohibits lien stripping, but because neither § 506(d) nor any other provision of the Bankruptcy Code applicable in that case gave the debtor the power to strip down the lien. *Harmon*, 101 F.3d at 581. Consequently, even assuming *Dewsnup's* holding would apply in a Chapter 11 case, Monarch might still be able to strip down ENSR's lien based on authority other than § 506(d). *See id.* The dispositive question, therefore, is whether such authority exists. *See id.* This court answers that question in the affirmative.

Congress's intent to allow bankruptcy proceedings to modify the rights of creditors must be clear and unambiguous. Section 363(f), the Code provision pursuant to which Monarch was able to consummate the sale of its assets to AMT, allows a trustee to sell a bankrupt's property "free and clear of any interest in such property" if any one of the following five scenarios exists: (1) applicable non-bankruptcy

8

law permits sale of such property free and clear of such interests;(2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;(4) such interest is in *bona fide* dispute; OR (5) such entity could be compelled such entity could be compelled in a legal or equitable proceeding, to accept a money satisfaction of such interest.  It is difficult to imagine a clearer statement of Congressional intent.  This section not only authorizes modification of creditors' interests, but authorizes the termination of those interests.  Though sale under § 363(f) is subject to the adequate protection requirement, most often adequate protection is provided if creditors' interests are attached to the proceeds of the sale.

The bankruptcy court was within its authority when it approved the sale proposed by Monarch.  One of the five scenarios necessary for the sale to take place existed at the time of the sale, namely, the interests of the creditors were (and still are) in *bona fide* dispute. The bankruptcy court provided adequate protection of the creditor's interests by attaching all statutory liens to the proceeds of the sale in the order of their priority, and with the same force and effect, as if the assets had not been sold.  The order approving the sale left creditors with exactly the same opportunity to recover the amounts owed to them by Monarch - ENSR was in no better or worse position due to the sale.

In this case, however, ENSR, is simply out of luck.  NationsBank is the holder of a first priority secured mortgage and lien against Monarch for over $ 24,000,000.00   The mortgage and lien was given by

9

Monarch to NationsBank and recorded by NationsBank well before ENSR commenced any work on the project, and long before ENSR recorded its verified statement of lien. The claim of NationsBank therefore primes any claim of ENSR. Monarch obtained approximately $ 20,000,000.00 for the assets sold to AMT. Monarch's remaining assets have been valued at $ 3,000,000.00. Twenty three million is not enough to satisfy the debt owed NationsBank, let alone debts owed other claimants. There is simply no equity to which ENSR's lien can attach. The bankruptcy court, therefore, was correct in concluding that the lien was null and void.

**The Second Issue**

With respect to the second issue, the bankruptcy court also correctly concluded that ENSR's lien did not attach to the fee interest of IDB or to the "offer of surety" allegedly made by NationsBank.

ENSR relies on § 35-11-210 of the Alabama Code for its claim that its mechanic's or materialman's lien attached to the fee interest of IDB. Section 35-11-210 creates two types of mechanic's or materialman's liens: (1) a lien for the full price of the materials furnished by the supplier, and (2) a lien for the amount of the unpaid balance due to the supplier of materials or labor from the owner. *Burch v. First Coastal Bldg. Supply, Inc.*, 606 So.2d 146, 148 (Ala. Civ. App. 1992); *Abell-Howe Co. v. Industrial Dev. Bd.*, 392 So.2d 221, 224 (Ala. Civ. App. 1980). A "full price" lien may attach where there is a contract, either express or implied, between the owner of the land and the supplier of the materials that obligates the owner to pay for materials if the contractor fails to do so. *Burch*, 606 So.2d at 148.

10

An "unpaid balance" lien is created where there is no contract, but the supplier gives notice to the owner of the supplier's intent to claim a lien on the owner's property before filing a verified statement claiming the lien. *Id.* When the lien is perfected, the supplier can then recover its indebtedness up to the amount of the balance owed to the contractor by the owner. *Id.* A statutory lien claimant seeking an unpaid balance lien is entitled to impose a lien only if there is an unpaid balance to which such lien can attach. *Id.* at 149, *Abell-Howe*, 392 So.2d at 225. Where there is no unpaid balance due or to become due to the contractor from the owner, there can be no mechanic's or materialman's lien. *Burch*, 606 So.2d at 149, *Abell-Howe*, 392 So.2d at 225.

In this case, there is no evidence of a contract between IDB (the owner) and ENSR (the supplier) to pay for materials or labor in the event that Monarch (the contractor) failed to pay for ENSR's service. Only the unpaid balance lien is relevant here. Mechanic's and materialman's liens can be perfected and enforced only by strict compliance with the requirements set out by the legislature. *Burch*, 606 So.2d at 149. Though ENSR satisfied its obligation to provide IDB with notice of its intent to claim a mechanic's/materialman's on IDB's fee interest in the property on which ENSR performed services, ENSR is not entitled to a statutory lien on IDB's property because there is no unpaid balance to which a lien could attach. The IDB's only obligation to Monarch, acting as contractor to perform the work authorized by the $286,976.00 site grant, was to transfer the required amount to Monarch upon completion of the services. Via order entered on September 3, 1998, the bankruptcy court directed IDB to turn over the full amount

11

of the grant to Monarch for deposit in an interest-bearing account. Via order entered on November 18, 1998, the bankruptcy court adjudged the grant to be the property of the Monarch, subject to the court's determination of whether ENSR and/or Johnson are eligible to receive any portion of the grant for work performed. The IDB does not owe Monarch anything -- there is no "unpaid balance" to which ENSR's claimed lien could attach.

ENSR also claims that an "offer of surety" was created by the order entered on August 13, 1998 approving the sale proposed by Monarch.[6] ENSR notes that the bankruptcy court's order provides:

> In the event the Court determines that Johnson, ENSR, or Garnet are [sic]entitled to be paid a portion of the proceeds of the sell, NationsBank shall pay to Johnson, ENSR, or Garnet as appropriate, as ordered by the Court.

This observation proves nothing. By order of August 21, 1998, the bankruptcy court concluded that ENSR was not entitled to any proceeds of the sale because its lien was null and void.

Having concluded that ENSR's mechanic's or materialman's lien against Monarch's property is null and void, that ENSR's mechanic's or materialman's does not extend to the fee interest of IDB nor to the so-called "offer of surety" made by NationsBank, it is clear that the bankruptcy court was correct.

---

[6] Though ENSR does not appear to base its "offer of surety" claim on the representation made on August 21, 1998 by counsel for NationsBank to the Bankruptcy court that NationsBank would disgorge any portion of the site grant determined by the court to belong to ENSR or to Johnson, appellees focus on this representation in their brief. This court notes that if ENSR were basing its offer of surety argument on this representation, the question would be, as appellees suggest, premature. The appeal record contains no evidence that the Bankruptcy court has made any determinations regarding ENSR's eligibility to receive any portion of the funds from the site grant.

An appropriate order affirming the judgment will be entered separately.

DONE this _____1st_____ day of July, 1999.

/s/ William M. Acker
_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE